# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. | SACV 13-455-GW(AGRx) |
| | Date May 8, 2014 |
| Title | P. Rea, et al. v. Michaels Stores, Inc., et al. |

Present: The Honorable GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Leandra Amber | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

David J. Gallo

Attorneys Present for Defendants:

Jesse A. Cripps. Jr.
Catherine A. Conway

PROCEEDINGS: DEFENDANT MICHAELS STORES, INC.'S MOTION FOR ORDER DENYING CLASS CERTIFICATION [89];

SCHEDULING CONFERENCE

The Court's Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendants' motion is GRANTED.

The Court sets the following:

| | |
|---|---|
| Motion hearing cutoff | August 11, 2014 |
| Pretrial Conference | **September 18, 2014 at 8:30 a.m.** |
| Jury Trial | **September 30, 2014 at 9:00 a.m.** |

A status conference re MDL situation is set for **June 12, 2014 at 8:30 a.m.** A Joint Report will be filed by noon on June 10, 2014. Parties may appear telephonically provided that notice is given to the clerk at least two business days of the hearing.

: 15

Initials of Preparer JG

*Rea, et al. v. Michaels Stores, Inc.*, Case No. SA 13-cv-00455 GW (AGRx)
Tentative Ruling on Motion for Order Denying Class Certification Under Rule 23

**I. Background**

This lawsuit is a class action involving the alleged misclassification of California store managers for defendant Michaels Stores, Inc. ("Defendant"). Prior to a remand from the Ninth Circuit, while the case was proceeding in state court, the Los Angeles County Superior Court certified the class in this action, according to state certification standards and procedures. *See* Docket No. 66. Defendant now moves to "deny" class certification under Rule 23 of the Federal Rules of Civil Procedure, which, looked at another way, is an attempt to decertify the class as certified in state court.

**II. Analysis**

A. <u>Effect of the State Court's Certification Order</u>

As an initial matter, the plaintiffs first assert that this Court is bound to maintain the class certification ordered by the Los Angeles County Superior Court due to a "full faith and credit" theory. However, an interlocutory ruling does not benefit from such protection. *See Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 79-80 (9th Cir. 1979); 28 U.S.C. § 1450 ("Whenever any action is removed from a State court to a district court of the United States,...[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect <u>until dissolved or modified by the district court</u>.") (emphasis added); *see also* Schwarzer, Tashima, et al., California Practice Guide: Federal Civil Procedure Before Trial (2013) § 2:3535, at 2D-201 – 202 ("The federal court has the same power to reconsider and reverse earlier interlocutory rulings as would the state court. Thus, law and motion rulings made by the state court will remain in effect, but can be changed by the federal court after removal."); *id.* § 2:3538, at 2D-202 ("The federal court may properly disregard earlier state court rulings...if *state law standards differ* from applicable federal standards."); *id.* § 2:3541, at 2D-203 ("Once a case has been removed from state court, it is subject to the Federal Rules of Civil Procedure....").

B. <u>Class Certification Standards</u>

The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See In re Northern Dist. of California, Dalkon Shield IUD Prod.*

1

*Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure (hereinafter referred to as either "Rule 23" or "Fed. R. Civ. P. 23"). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996). Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[1] and at least one of the subparagraphs of Rule 23(b).[2] *See id.* at 1234. The Court is permitted to consider any material necessary to its determination, though it should not engage in a trial of the merits. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011) (noting that the "rigorous analysis" required at class certification will "[f]requently...entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements."); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (characterizing as "a correct statement of law" the district court's determination that "although it could not 'weigh the evidence or otherwise evaluate the merits of a plaintiff's class claim,' it could 'compar[e] the class claims, the type of evidence necessary to support a class-wide finding on those claims, and the bearing of those considerations on Rule 23 certification'"); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009) ("The district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis."); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975) (approving of class certification analysis where district judge "analyzed the allegations of the complaint and the other material before him (material sufficient to form a reasonable judgment on each requirement), considered the nature and range of proof necessary to

---

[1] Rule 23(a) requires that the party/parties seeking certification show:
    (1)    the class is so numerous that joinder of all members is impracticable;
    (2)    there are questions of law or fact common to the class;
    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4)    the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

[2] A class may be certified under Rule 23(b)(3) where questions of law or fact common to members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

establish those allegations, determined as best he was able the future course of the litigation, and then determined that the requirements were met at that time," and noting that a court is permitted to "request the parties to supplement the pleadings with sufficient material to allow an informed judgment on each of the Rule's requirements").

C. Analysis

The Court will deny class certification/decertify the class here. It is plain that, at a minimum, the plaintiffs cannot satisfy the predominance requirement under Rule 23(b)(3). Given the obvious predominance shortcoming, the Court sees no reason to consider the other parts of the standard class certification analysis (numerosity, typicality, adequacy, superiority). *See Dukes*, 131 S.Ct. at 2551 n.5 ("In light of our disposition of the commonality question, however, it is unnecessary to resolve whether respondents have satisfied the typicality and adequate-representation requirements of Rule 23(a).").

Predominance analysis is "much more rigorous" than commonality analysis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It does not involve counting the number of common issues, but weighing their significance. *See, e.g., Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (contrasting the "number and importance" of common issues with the "few" and "relatively easy" individualized issues).

Here, the key issue will be whether the plaintiffs and the class members were exempt from overtime requirements, a determination tied up with all five of the claims in the First Amended Complaint. *See* Docket No. 3, Exh. C; *see also* Docket No. 118, at 5:27-28 ("In the case at bar, all of Plaintiffs' claims are grounded in a claim of misclassification."). The exemption at issue here is the "executive exemption. That exemption covers employees who 1) have "duties and responsibilities" involving the "management of the enterprise" in which he/she is employed or of a customarily recognized department or subdivision thereof, 2) "customarily and regularly" direct the work of two or more other employees therein, 3) have "the authority to hire or fire other employees" (or whose suggestions and recommendations regarding hiring, firing, advancement, promotion, or any other change of status, would be given "particular weight"), 4) "customarily and regularly exercises discretion and independent judgment," 5) is "primarily engaged in" – meaning spending at least 50% of his/her time in – duties meeting the test of the exemption, and 6) meets a minimum salary requirement. *See* Cal. Code Regs. tit. 8, §

3

11070(1)(A)(1), (2)(K); see also 29 C.F.R. § 541.102 (defining "management"). For purposes of examining the "primarily engaged in" questions under the exemption, the California regulations instruct that "[t]he work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered." *Id.* § 11040(1)(A)(1)(e); *see also Ramirez v. Yosemite Water Co.*, 20 Cal.4th 785, 797-98 & n.4 (1999) (indicating that state exemptions are pegged to whether employees are engaged primarily in exempt work, meaning more than one-half of the employee's work time).

The commands of the applicable regulations themselves, along with the actual evidence the parties have submitted in connection with this motion and discussed in their briefs,[3] demonstrate that any class proceeding in this case would almost necessarily devolve into individual mini-trials regarding whether each particular class member actually met the requirements for exempt status. *See, e.g.*, Docket No. 99. In particular, Defendant's evidence demonstrates that a uniform, consistent performance practice for store managers simply does not exist, at least in connection with several of the crucial determinants for the executive exemption. Both the "primarily engaged in" and the exercise of discretion/independent judgment factors would turn on the individual store managers' practices. Assessing those practices, and whether they satisfy the executive exemption for each individual store manager, would, in this Court's view, predominate over common questions of law or fact.

In fact, as the parties are well-aware, this Court has already presided over a bench trial involving one of Defendant's store managers, Gayle Booth. *See Adams v. Michaels Stores, Inc.*, No. CV 09-1939-GW (AGRx), Docket No. 265 (C.D. Cal. July 31, 2013). From that experience this Court has had first-hand experience with the fact- and evidence-rich showing bearing upon

---

[3] Plaintiffs find fault with the declarations Defendant has submitted for the Court's consideration, arguing that they cannot be trusted as they have been submitted by *current* employees. However, plaintiffs have not explained why the Court should look with a jaundiced eye towards the evidentiary submissions of those employees because of a presumed desire to curry favor with (or at least to not anger or offend) a current employer, but take at face value evidentiary submissions of former employees, who one might presume (if one were engaging in speculative presumptions) have an axe to grind. The declarations are all submitted under penalty of perjury. Even assuming that the Court could engage in what plaintiffs propose, *see generally Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (characterizing as "a correct statement of law" district court's order indicating that it "could not 'weigh the evidence'"), until those current employee declarations are shown to be individually false, the Court has no reason to discard them *en masse*.

4

the question of whether one of Defendant's store managers is exempt from overtime requirements – in particular, in that case only the "primarily engaged" element of the executive exemption. Multiplying that showing by the scores or hundreds of store managers whose claims would be at issue here would swamp the common issues of fact and law that this case presents and plaintiffs have identified.

This view of the situation is fully consistent with Ninth Circuit opinions in this area. *See Vinole*, 571 F.3d at 944, 946-47; *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958-59 (9th Cir. 2009); see also Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545-46 (9th Cir. 2013). As the district court concluded in *Vinole*, here too there is "no common scheme or policy <u>that would diminish the need for individual inquiry</u>." *Vinole*, 571 F.3d at 939 (emphasis added). The Court would not disagree that there are common issues, common policies, and even common requirements. Still, the need for individual inquiry would unquestionably remain and predominate. *See Marlo*, 639 F.3d at 948 (9th Cir. 2011) ("[T]he fact that UPS expects [full-time supervisors] to follow certain procedures or perform certain tasks does not establish whether they actually are 'primarily engaged' in exempt activities during the course of the workweek or whether they 'customarily and regularly exercise[] discretion and independent judgment.'") (omitting internal citations); *Vinole*, 571 F.3d at 944 ("Here, the district court held that analysis of the outside salesperson exemption precluded certification because that analysis would require an individualized inquiry into the manner in which each [external home loan consultant] actually carried out his or her work, and that this burden was not lessened by the presence of other issues susceptible to common proof."); *see also id.* at 945 n.11 (quoting the California Supreme Court's statement in *Sav-on Drug Stores, Inc. v. Superior Court (Rocher)*, 34 Cal.4th 319, 336-37 (2004),[4] that "[a]ny dispute over how the employee <u>actually spends his or her time</u>, of course, has the potential to generate individual issues") (emphasis added); *Wells Fargo*, 571 F.3d at 959 (noting that where there is a uniform exemption policy "in place or not, courts must still ask where the individual employees actually spent their time"); *cf. Marlo*, 639 F.3d at 948 ("[T]he existence of a policy classifying [full-time supervisors] as exempt from overtime-pay requirements does not necessarily establish that [full-time

---

[4] The approach to the class certification question set forth herein is admittedly at odds, in certain respects, with the California Supreme Court's decision in *Sav-on Drug Stores, Inc. v. Superior Court (Rocher)*, 34 Cal.4th 319, 334-38 (2004). *Sav-on*, of course, apart from being decided under California law certification principles (and reviewed under an abuse of discretion standard), pre-dated *Vinole* and *Wells Fargo*.

supervisors] were misclassified, because the policy may have accurately classified some employees and misclassified others.").

*Marlo* and *Mora v. Big Lots Stores, Inc.*, 194 Cal.App.4th 496 (2011), both confirm the sense behind this approach. In both cases, like here, there was evidence that common policies and common job descriptions would govern any class claim. *See Marlo*, 639 F.3d at 948; *Mora*, 194 Cal.App.4th at 502, 507. Again, like here, in *Mora* both sides presented evidence supporting their respective positions that, on the one hand (from the plaintiffs' perspective), the actual, nonexempt job duties were attributable to uniform corporate policies and practices and, on the other (from the defendant's perspective), that – among other things – "wide store-to-store variation exists in the types of work performed and amounts of time per workweek spent by managers on different activities." *Mora*, 194 Cal.App.4th at 508. Here, the Court need not consider Defendant's evidence for its merits in order to determine that the variation in store managers' actual work activities will make a need for individualized (and predominating) mini-trials almost inescapable. In the wake of *Vinole* and *Wells Fargo*, other district courts have reached similar conclusions. *See, e.g., Rix v. Lockheed Martin Corp.*, No. 09-cv-2063 MMA (NLS), 2011 U.S. Dist. LEXIS 25422, *18-24 (S.D. Cal. Mar. 14, 2011); *Friend v. Hertz Corp.*, No. C-07-5222 MMC, 2011 U.S. Dist. LEXIS 25196 (N.D. Cal. Feb. 24, 2011), *aff'd*, 2014 U.S. App. LEXIS 5056 (9th Cir. Mar. 18, 2014).

### III. Conclusion

For the above stated reasons, the Defendant's motion to decertify the class action certified in the Superior Court would be granted.